We'll hear argument next in Case 10-8505, Williams v. Illinois. Mr. Carroll. Mr. Chief Justice, and may it please the Court, in this case, Sandra Lombatos testified that Mr. Williams' DNA matched a DNA profile that, according to assertions made by analysts from Cellmark Labs, was the genetic description of the purported offender. Because no one from Cellmark appeared at Mr. Williams' trial, Lombatos' testimony conveyed that testimonial statements from Cellmark violated Mr. Williams' rights under the Confrontation Clause. For these reasons, the Illinois Supreme Court's decision should be reversed. Now, Ms. Williams' — or Ms. Lombatos' testimony on direct examination clearly conveyed Cellmark's statements. She testified that the vaginal swab and blood sample from the victim were sent to Cellmark for DNA analysis. She later was asked, was there a computer match generated from the male DNA profile found in the semen from the vaginal swabs of the victim and the male DNA profile that had been identified as having originated from Mr. Williams? Sotomayor, it hasn't been the focus of the briefing, but you've just made it the focus here. I know that you've been claiming that her statements about what constituted the Cellmark lab results are a statement that violates the Confrontation Clause. But are you taking the position that her statements and the admission of the documents mailing the lab sample to the laboratory and them getting it back, that all of those business records were improperly admitted? Because she testified that in her records she sees that her lab, and she says, I think those records were produced, I could be wrong, that the shipping records were produced. They were produced and admitted into evidence that the lab sample taken from the victim, LJ, was mailed to the laboratory, and that it came back. Are you taking the position that those shipping documents were not business records? Are you taking the position that those were improperly admitted? No, Your Honor. At this stage, we are not challenging the admission of the shipping records. Well, that would just show that the material went to and came back from the lab. It wouldn't show what the lab results were. It was the results that she testified to, right? That's correct, Your Honor. And what other evidence was there of the results besides her testimony? There was no other evidence. In the case of the blood that was tested in the police lab, there the person who was tested did testify at the trial, right? It wasn't just Labrador's, but the one who had tested the blood? The person who analyzed Mr. Williams' blood did testify live. Yes. Yes. Abernathy testified that she did the blood test, and it went into the State database with reference to the other crime, not this crime. Am I correct? Yes, Your Honor. When he was arrested for an unrelated matter. But she's an expert. She testified how she did the test and what the D and that she put the DNA. And that's the only result into the data bank. That's correct, Your Honor. Hasn't it long been accepted that experts may testify to the facts that form the basis for their opinions, on the ground that when the experts go over those facts, they are not those that information is not being introduced to prove the truth of the matter and that they are assertive, that the truth of those underlying facts, only that those are the facts that the expert has relied on in reaching an opinion? And that has not been considered to be hearsay. Now, do you argue that those, that that's incorrect? Those statements cannot be testified to as an, by an expert without their constituting either hearsay or testimony within the meaning of the Confrontation Clause? In this case, where the basis evidence the expert testifies to, where it's, the expert's opinion depends on that, those statements being considered true, in those instances, then, yes, we are arguing that the Confrontation Clause does not allow. Alito, let's say that, let me put it this way. Let's say the expert, people from the, the expert testifies. I received, I looked at the report from the lab. I looked at the report from, I looked at the report from Cellmark, the outside lab, I looked at the report that we did, and there, there is a match. And so the expert is test, is mentioning facts that form the basis of the opinion, but not testifying to the truth of those. Is that a violation of the Confrontation Clause at that point? If the, if the expert is not, you know, asserting that the statements are true, then no. However, that's not what happened in this case, Your Honor. Ms. Lombardo's verdicts are true. Scalia would be utterly irrelevant, would it not, if the statements were not true? I mean, it's one thing for an expert to testify about a hypothetical, you know, assuming this, this, this, Mr. Expert, what would the result be? Well, on those assumptions, it would be this. But this was not, nobody asked, asked her to assume those things at all. She testified that, that she had a match between what she had done and what had been done on the, on the DNA of this individual by somebody else. That seems quite different from the, from the ordinary hypothetical put to an expert. Breyer, I would have thought, yes, you, sorry, go ahead. No, I was just going to. You were going to agree with that. Yes, I was. I know. I mean, I'm sure you've looked at this probably. But the most, one of the more interesting things I found in these briefs were the references to Wigmore. So I went back and read what Wigmore said about scientific evidence, expert evidence, and business records. And he certainly concedes and agrees with Justice Scalia. And those opinions are filled with hearsay. I mean, there's no expert who isn't relying on what his teachers told him in college, which reflects dozens of out-of-court statements given to dozens of people who wrote them up in books. So expert opinion is always based on hearsay, almost, and so are business records. They are filled with hearsay. But Wigmore writes a treatise, doesn't he, where he says exceptions have been recognized since the 17th century or earlier to cover that kind of material. So my question for you is why shouldn't we recognize a similar related kind of exception here? We're trying to discover the meaning of testimonial. The difference here is a police lab or a lab that reports to a police lab, the individuals there probably know that there is a fairly good chance. That what they say will be used in a criminal trial. They don't know it for sure, but they're controlled by the canons, by accreditation, by tests of reliability, by the fact that they're not normally interested in the results of a trial. As here, they couldn't care less. They don't even care if it is used in a trial. And all the Wigmore factors for both exceptions could support a similar exception here, which would have the following virtue. It would have the virtue of not requiring ten people to come in and testify, whom the defense is, of course, free to call. And it would also have the virtue of removing the temptation for prosecutors to stop relying on the more reliable evidence, DNA, and instead encourage them to rely on the less reliable evidence, namely the eyewitness testimony in a case. Now, that really is all my questions in one, because I understand every argument you're making as fitting it with hearsay. I agree with that. And I also agree to a degree with the testimonial point. And I see the need for an exception, and Wigmore provides all the reasons. And since we're interpreting that word, testimonial, don't we have the power, and why shouldn't we create one out of the word testimonial? Well, Your Honor, because the Confrontation Clause guarantees the defendant the right to confront and cross-examine the witnesses against him, and that's the reason why this Court should not make an exception. Scalia, you're not objecting to hearsay, are you, counsel? You're objecting to a violation of the Confrontation Clause, which is quite different from what Mr. Wigmore was writing about, which was hearsay. But Wigmore actually believed that the Confrontation Clause simply encapsulated the hearsay rule. We've said the contrary, though, haven't we? I'm asking you the question, and I'll go further in your direction. I'll go further. Because I would say, what about saying this, that not only do we recognize the exception, but it isn't a full exception, that if the defendant can show some reason to believe that either the laboratory is not properly accredited, it isn't doing things properly, or that the individual technician has something personal or knows about the defendant that makes it suspect, immediately the presumption that the exception applies disappears, and the prosecutor has to call the witness? You can say, well, we shouldn't make that up, but I believe if you go back to the 18th century, you'll discover that your interpretation of the Confrontation Clause was not there. So that's what's basing my question, and I'd like your reaction. It's a long question, considers an exception, and I'd like you to give me your reaction to that. Well, Your Honor, I think that this Court's decisions in Crawford and Melendez-Diaz have been bull-cumming, largely foreclosed on making such an exception.  have the capacity to do that. Justice Breyer dissented from those opinions. He did, but I mean it, Justice Breyer, and I mean it because I see extending those cases from one individual from a laboratory, being familiar with the results, to requiring in ordinary cases the calling of what could be up to ten technicians. I see that as making a sea change in normal criminal law practices, and my motive is, as I said, I fear it will push the system in the direction of relying on less reliable eyewitness testimony rather than more reliable technical laboratory DNA-type evidence. Now, you have my — I've made the point, and I really want to get your response. Ms. Carroll, are we talking about ten witnesses? I thought we were talking about just one witness from Selmar. Yes. On this record, Your Honor, the statements that were produced were the statements of the authors of the report. So — That's one person, not ten. I believe there are two signatories to the report. Well, ten is not a far-fetched hypothetical. We have an amicus brief from the Manhattan District Attorney's Office and the New York City Chief Medical Examiner's Office, and they say that their very fine crime lab involves at least 12 technicians in the analysis of DNA. They break it down that way because it increases accuracy, it decreases the chance of any favoritism for the prosecution, and they say that if it is impossible for us to bring all 12 of those technicians into court to testify in every case in which there is DNA evidence, and if we have to do that, we will just not be able to use DNA evidence in court. We will have to rely on less reliable evidence. Is that just a — do you think that's just a practical consequence that we have to accept under Crawford? No, Your Honor, because even in the worst-case scenario described in the New York County District Attorney's Office brief, not all 12 people in that situation make testimonial statements, and not all 12 people's testimonial statements are presented at trial. For the confrontation clause to be satisfied, it is only those witnesses who the prosecution chooses to present at trial who must testify. It's up to the prosecutor which of those 12 he wants to bring in, whether he wants to bring in all 12 or just one. If he thinks the jury will be sufficiently persuaded by bringing in just one, he can bring in just one, right? Yes, correct. But he has to bring in the one and not hearsay about what the one would say. How will bringing in one satisfy the confrontation clause problem? If 12 people perform steps in the analysis and one person testifies about what 11 other people did, don't you have the same confrontation clause problem? No, Your Honor. Again, it's whose testimony — You don't? No, we don't, because the question is whose statement is being presented. Now, given the five steps in the brief, the electrophoresis step, the person who does the DNA typing and determines what alleles are present in the sample, that person probably has to testify because that's really what the results are, what alleles are present. The amplification step, the person who, you know, copies the DNA and tags it, I don't think that's a testimonial statement, and in this case, no statement from someone who did that was presented. The next step, quantification. Why is that not a testimonial statement? Well, just performing a test is not a testimonial statement. And just stating — If the person were in court, the person would say, this is what I did. If the person was in court — And that's not testimony? In that case, it would be testimony. However, that person doesn't have to testify in order for the State to present its evidence. If the State chooses to present that person's testimonial statement at trial, then yes, the Confrontation Clause would require them to present that testimony live. However— Kagan, I'm just trying to figure this out, and I'm — here's my question. Suppose you had two witnesses, one from — one who had done the lab analysis on Mr. Williams and one who had done the lab analysis from the victim, and they both testify. And now an expert comes in, and the expert says, I've looked at both reports and there's a match. Now, there would be no problem at all with that. Is that right? That's correct, Your Honor. Okay. So now we only have one of the lab technicians, and we take away the other lab technician. And what you're saying is, well, now we have this expert and she's saying she can do a match, but the question is a match of what? That's the question, right? That's correct, Your Honor. So why is that a confrontation clause issue? Why isn't it just that the prosecutor has failed to prove an element of his case? It's a confrontation clause issue because the prosecution presented the statements of the person who did the analysis on the victim's vaginal spot. Well, is that right? I mean, I thought that the judge here said, no, I'm not taking this for the truth of the matter asserted. I'm only taking your statements about the lab tests as an indication, as the basis for your opinion. So I'm listening to your opinion. The problem is, in this whole case, there's been no factual testimony about what the results were from the swab on the victim. Isn't that right?  You are missing something, Your Honor. And the trial judge in this case never stated he was not considering the evidence for its truth. No place in the record does the trial judge state that. And in fact, in his finding, in his facts, he states he was convinced of the — that there was a match because the evidence from the experts established that victim — that Williams' semen was found on the victim. And he noted that, well, Cellmark was an accredited lab. If he wasn't considering Cellmark's statement for the truth, he wouldn't care if they were accredited. Well, what did the Illinois appellate court say about that, about whether the information was — whether the evidence was admitted for the truth of the matter asserted? The appellate court held that, as a matter of Illinois law, these statements that serve as the basis of an expert's opinion are generally deemed not to be admitted for the truth. However, in this case, there is no meaningful distinction between considering Cellmark's statements to — you know, in assisting the evaluation of Lombardo's testimony and considering it for the truth. If the statements weren't true, then Lombardo's testimony would not link Williams' DNA to the crime. Alito But isn't Justice Kagan's question there the correct question? Isn't that a question of Illinois evidence law, not a Federal constitutional question? No, Your Honor. Was there sufficient — was a sufficient foundation laid for the introduction of the expert's testimony? No, Your Honor. That was addressed by the Illinois court. No, Your Honor. The question here isn't whether the State's evidence was sufficient. It's whether the evidence the State did present violated Mr. Williams' rights under the Confrontation Clause. Now, I can give an example or an analogy. Suppose a police officer were to testify, a witness gave me this photograph and told me this is a photograph of the — of the offender. I compared this photograph to a photograph of the defendant. I found that they matched. Now, the police officer, he compared the photographs. You know, we're not contesting Lombardo's match. But the statement that this is a photo of the offender, that's not the officer's statement. That's the statement of the witness who gave him that photograph. But that's just because the photographing is something that people wouldn't dispute. I mean, what if the State presents testimony saying I took the sample, I put it in the sample case, I sent it to Cellmark saying give us a DNA analysis of this sample. We got back from Cellmark the analysis with the same name on it. And the expert testifies I compared that to a DNA from the defendant and it was a match. You would be free in cross-examining to say do you know what they did at Cellmark? And she would say, well, they're a DNA lab. We asked them to do a DNA analysis. But do you know what happened? No, I don't. As far as you know, do they just — did they just ignore it and not do anything? She said, well, yeah, I didn't — I'm not testifying to what happened at Cellmark. I'm just telling them we sent the DNA there and this is what we got back. Why is that not perfectly fine? Because that person's testimony that the results we got back were connected to the samples we sent. They did not — she does not say that. She said we sent the sample marked crime scene or whatever it was. We got back a data sheet that said crime scene. Well, expert, do you know that they didn't mix them up? No, I don't. All I know is what we sent and what we got back. Your Honor, I still believe that would be a Confrontation Clause violation because the writing on the data sheet that said crime scene, a person at Cellmark had to write that down on the data sheet. So someone from Cellmark was making a representation that that data sheet is connected and all the witnesses — all the witnesses testifying to is what they sent and what they got back. And you're free to cross-examine about what went on at Cellmark. And a jury is free to say, well, I believe the circumstantial evidence about what happened or defense counsel can say, why don't they have anybody here from Cellmark? And a jury can say, well, yeah, that's a good point. It just seems to me that nobody from Cellmark is testifying and what you're — that's what you're objecting to, but they don't need that testimony to present the experts conclusion to the jury. Well, Your Honor, hypothetically, the State could — I believe the State could present its evidence through circumstantial evidence, but that's not what happened in this case. Lombardo did testify that — she didn't simply state that I got a profile back. She testified I got a profile that was the male DNA profile found in the semen from the vaginal swab. That's a statement from Cellmark. That's not Lombardo's statement. And just to show you. And she — and she goes further. She says, and based on that, which I believe to be true, she didn't say that, but this is the implication. Based on that, which I believe to be true, this belongs to Williams. This DNA is Williams's DNA. And if she weren't relying on the truth of the assertion from Cellmark, it would be irrelevant for the jury. Isn't that your point? That's correct, Your Honor. That's true whenever — whenever an expert — an expert makes a statement. There is a conceptual difference between their testifying to something out of court for its truth and that being the basis for the expert opinion. In the one case, she's relying upon a statement in order to form her opinion, and in the other case, she's introducing the statement. And you're saying in this case, that's a distinction without a difference. Isn't that what's going on? That's correct, Your Honor. All right. But still, there is the conceptual difference. And as long as there is that conceptual difference, don't we have a basis for distinguishing this case from Melendez? I do not believe so, Your Honor. Had — had Cellmark's statements been presented in the report itself, the report being admitted itself, I think there would be no question that that would be a violation of the clause under Melendez-Diaz and Bolkoming. The fact that the same statements were coming in for the same evidentiary reason through the live testimony of Lombato shouldn't change that situation. It's the same statements coming in for the same reason. Is there any more you can tell us? You're saying that the State of Illinois case is weaker here than in Melendez, where they had a certificate, and in Bolkoming, where they had somebody from the lab testify as to lab procedures. Here, they have neither, and yet Illinois somehow says it comes in. That's right, Your Honor. That's correct. Thank you, counsel. Ms. Alvarez. May it please the Court? Mr. Chief Justice, may it please the Court? Counsel, on your theory of this case, and — and I think you say, first, it's not a statement, and second, that if it is, it was not offered for the truth. Under your theory, if this lab technician had introduced Cellmark's report, that would have been okay, because it wasn't offered for the truth. The Cellmark report was not introduced as evidence. I'm changing the facts. And if she had — Under your theory, she could have introduced the lab report. If we offered her the Cellmark report into evidence for the truth of the matter asserted, it would be a different situation. I don't understand the difference, meaning the fact that you didn't physically introduce the report makes a difference? The — Ms. Lombardo's testify consisted with the confrontation clause here. She testified — She — she testified that she reviewed lab samples. As an expert. That matched the defendant. So what's the difference between that and saying, I have the report in my hand, I match that report with the Williams report, and this is my conclusion? She did not parrot the Cellmark report as we had seen in Bull Cumming. She did not testify that Cellmark said this was the defendant's profile, that Cellmark said this was a match. She did much more. She said that Cellmark said this is LJ's vaginal swab DNA. Right. So she said that. Because the vaginal swab that was taken from the victim, and there was a chain of custody here and proper foundation that was laid, the vaginal swab that was taken from the victim, and this bore out through the business records that came in on the shipping manifest. So what's the difference between this and Justice Kennedy's question about Bull Cumming? Could the expert in Bull Cumming have said, as one of the amici here said, that all they would have had to do in Bull Cumming is to read or to give a report that gave the blood alcohol content, the .5 or .10 or whatever it was, and have an expert come in and say that number shows he's drunk? Is that any different than this situation? If the expert in Bull Cumming did more than what he simply did in Bull Cumming, and that was just simply read the report and testify that that's what that lab did, if he actually did his own independent analysis based on his expertise, based on his  Sotomayor No, no, the only part of his expertise is the report says .10. I'm not offering it for the truth. I'm assuming if that's true, then he was legally drunk. If he were to give his independent opinion based on his analysis and what he had done, then we would have seen a situation closer to this. Sotomayor He's done nothing. All the report did was give a number. And the supervisor comes in and says that number violates his legal drunkenness. How is that different from this? If that report is being used, is being offered to prove the truth of the matter asserted. All right, but you're not telling me why that's not the same here, because he – what this expert said is the cell mark report is from this victim. Sotomayor So it's the same set of numbers as in Bull Cumming. Now he's taking a step and saying instead of legal drunkenness, it matches someone else's that I took. But, no, what happened here was Ms. Lombardos testified based – and gave her own independent expert opinion based on her skills, her knowledge, her expertise. She relied You said independent, and I don't understand. You said that in your brief. I don't understand how Lombardos' testimony can be independent of the test results applied. I mean, it's based on the test results. It can't be independent of them, because it's entirely dependent on them. But an expert can always testify about the material that they relied on, whether that material is ever admitted into evidence, and sometimes that material could never be admitted into evidence. But she, in fact, testified to what she relied on in addition to what she relied on. Scalia No, but she didn't just say, I relied on stuff that I received from Caremark, whatever the name of the lab was. She said, I relied on material that was a swab containing the DNA, the sperm, of this particular individual, and she did not know that. She testified that she relied on those materials, and she can't testify to that. Scalia She didn't just say, I got something back from the lab, and I relied on whatever that said. No, she said what she had gotten back from the lab, and she did not know of her personal knowledge that it was what she said it was. She knew from the procedures and the chain of custody and the shipping manifest that what was sent initially to Cellmark, after preliminary tests were done at the Illinois State Police Crime Lab showing the presence of sperm, that it was sent to Cellmark, and it was analyzed at Cellmark and came back. Scalia No, if they had incompetent people there, the last case we had involving this kind of an issue, the reason they didn't bring in the lab technician to testify was that he had been fired in the interim for some reason which we didn't know, but it was pretty clear why he would not have been a very good witness. We don't know how good this lab was. We don't know how good the individuals who did the test were, and that's why it's up to the State to bring forward testimony saying what the lab did. And the only testimony they brought forward was the testimony of this witness, who was not there. The testimony of Ms. Lombardo satisfies the Confrontation Clause because she is the witness against the accused in this case. And the fact that she testifies that she relies on material that was generated by Cellmark does not make Cellmark the witness against the accused. But she said that, I would agree with you, but she said more than that. She said, I relied on material provided by Cellmark, which is, and then she described what that material was. And she had no personal knowledge of that. She had no personal knowledge of that, and that came through during this cross-examination. Ms. Lombardo was subjected to a very quite lengthy and a quite specific cross-examination. Well, there are two types of evidence that are involved here. One is chain of custody evidence. Was the result that was sent back the result that was done on the sample that was sent to Cellmark? Well, that's just purely chain of custody. It has nothing whatsoever to do with the accuracy or the professionalism of what was done at Cellmark. And she did make a statement. She did say that the sample, that the result that came back from Cellmark was done was based on a test of the vaginal swab that was sent there. The other has to do with what Cellmark did, how well they did it. She didn't say anything about that. Now, as to the chain of custody, if that's testimonial, isn't it simply duplicative of the very strong circumstantial evidence regarding the chain of custody, the sending of it out with certain markings and the receipt back with certain markings? Right. The chain of custody was strong in this case. The evidence that was presented through the shipping manifest, through the other witnesses that testified in this case. The fact that Ms. Lombados testified that she did not know exactly what they did at Cellmark, again, as an expert, she was able to talk about what material she relied on, the Cellmark materials. The Cellmark materials were never tested. The chain of custody are just supporting actors. The key actor in the play, the hamlet in the play, is the person who did the test at Cellmark, and she or he is not here. And if you want to say, oh, this is not to tell the jury, now, we're not saying that this is admitted for the truth. We're not saying that this is Williams' DNA. The judge would say, well, then it's irrelevant. It's excluded. And it seems to me, in response to Justice Scalia, not only does he indicate that this is hard to distinguish from Bill Comey, in Bill Comey, at least you had an expert say how the laboratory works. Here you don't even have that. You have less here, with reference to Cellmark, than you did in Bill Comey. Ms. Lombardo did testify, both on direct examination and cross-examination, that Cellmark was an accredited lab. The Illinois State Police crime lab routinely uses outsourced. But in Bill Comey, we said that was not sufficient, and in that case, the person was from that lab. But, Ms. Lombardo, we never introduced any Cellmark reports in this case. There were no testimonial statements conveyed through her testimony. There were no out-of-court statements used to prove the truth of the matter asserted. What was presented was the expert opinion of Ms. Lombardo, who was a duly qualified expert in forensic biology and DNA. And not only did she have the ability to look at the Cellmark material, she interpreted the material that came from Cellmark. And what came from Cellmark, the electropharogram, what I would submit to you is not testimonial. It's a machine-generated chart that, to the naked eye, to a trier of fact, means absolutely nothing unless an expert actually interprets that. And Ms. Lombardo has testified to how she interpreted that. She talks about the real to the fake. Kennedy, I don't know how that's any different from Bill Comey and Melendez-Diaz. Well, the Melendez-Diaz, what we had in Melendez-Diaz was, in fact, a certificate, an affidavit. It was created in your case. Ms. O'Brien, that doesn't make sense. No, I think in Melendez-Diaz, it's clear because that was — that report was drafted, created for the primary purpose of being used as a substitute of live testimony. I submit to you that the Cellmark reports were not, and the electropharogram, again, which would need expert interpretation. The allele chart, again, I would submit is not testimonial, that those reports were not created in lieu of live testimony. And Ms. Lombardo looked at that. She interpreted it. In fact, she even said that there was something on the electropharogram that she didn't agree with Cellmark on. It was a certain one peak that was higher that she felt was just, in her expert opinion, background noise. So the report had been introduced, the Cellmark report, it would be testimonial. Is that right? Well, I believe if the State had tried to introduce that Cellmark report, it would have been offered for the truth of the matter asserted. And it would be — it would implicate the Confrontation Clause, but that's not what happened here. How does it become non-testimonial when it's relayed by the recipient of the report? I mean, if you're not introducing it to the truth, then it's not relevant. Right. I think the key is the use. How were these statements used? How were these reports used? And in this particular case, they were not used to prove the truth of the matter asserted. They were used for the limited purpose of explaining the expert's opinion and for the expert to testify to what she relied on in getting to her opinion. Kagan. Kagan How do we know that, Ms. Alvarez? Is there a statement from the finder-of-fact who's the trial judge here that he's understanding her testimony to be not for the truth of the matter asserted? What's the best evidence that that's what the Court was thinking? There is. And in the joint appendix on page 172, the language from the trier-of-fact, he says just that, that he's considering these for the limited purpose. In fact, the Illinois appellate court also affirmed, stating that this evidence came in for a limited purpose, as well as the illimited purpose of explaining the basis for her opinion. But her opinion is that this is matched to Lombardo's. I'm sorry, Your Honor. Her opinion is that this is a match to Lombardo's. But if the match material isn't admitted for the truth of the matter asserted or isn't considered for the matter asserted, then that testimony is irrelevant and meaningless. Well, not irrelevant, but I believe it goes to the weight of her testimony, and that is for the trier-of-fact to determine. And here it was a bench trial. It was the judge. But if, in fact, the State presents the evidence in the way that we presented it here, we're always taking the chance that it would weaken the case, and it has to be considered for the weight to be given to Ms. Lombardo's testimony. Kagan, suppose the State had not presented evidence of the shipments, so that you didn't even have that. Would you at that point, should the judge have just thrown out the case? No, Your Honor, I would say no. I believe there was the testimony of the victim in this case who identifies this defendant as the perpetrator in this rape. In addition, the judge made a finding when, in his ruling, the trier-of-fact said that he believed her 100 percent and he found her extremely credible. But I guess what I'm trying to suggest is that if there's no evidence in the case that the match is to the victim, where's your case? Well, then we probably would have problems with the Illinois evidentiary rules and the law in Illinois. We obviously presented in this case sufficient change, a sufficient foundation to show where, when that, we presented the testimony, not only of the victim, but the doctor who was present when the swab was taken, of the officers who brought the sealed swab to the Illinois State Police Crime Lab, how that sealed swab was first looked at for preliminary test by Mr. Hapak in ISP in order to, before they sent it to Selmark, and then Selmark extracts a DNA profile of a woman, a female, and a man. Selmark never makes the match here. Selmark never says, this is Mr. Williams' DNA. That is done by Ms. Lombatos. Through her expert and her expertise, she makes the match. Scalia But Selmark says this is the male DNA that was found in the sample that was sent. Selmark made that decision, right? And her testimony was based upon the fact, was based upon comparing that male DNA with her own blood sample. It's meaningless unless that male DNA was indeed the defendant's. And she can testify to what she relied on again. And it goes to her weight if the prior fact chooses not to believe it. The the, but the evidence here was clear. I wouldn't believe that if the prosecution put the question to her this way. Assume that you got a report which said that this was the defendant's DNA. If you were to match that with this, the work you've done on the blood sample, would you find that, you know, that the sample was taken from the defendant? And she would say yes. And the jury would say, so what? I mean, you've just, you've just made a hypothesis, if you had been told. That, that would be worth nothing. Her testimony was, I received information that this was indeed the DNA taken from the male DNA taken from the, from the swab that was sent. Without that, the testimony was, was worthless. It's just, you know, a hypothesis. She, she responds to a hypothesis. That was not the way this was played out in the trial, was it? The, again, our position is that her testimony was consistent with the Confrontation Clause. The Confrontation Clause is concerned about what statements are admitted, what evidence is admitted. No Selmark reports were admitted here. She did not parrot the testimony, I mean, the report of Selmark. She testified to what she did, how she arrived at her own independent opinion on this, which, again, we did not offer any out-of-court statements to prove the truth of the matter, sir. We offered Ms. Lombados, who was subjected to a lengthy cross-examination, and that satisfies the Confrontation Clause. And the inability to test the reliability of what happened at Selmark does not trigger the Confrontation Clause. Ginsburg, I thought you earlier recognized that her, her opinion could not be independent of the test results. It depended entirely on the test result. So I now you, you inserted independent again, and I thought you had, you had given up on that. Well, I think, you know, what we saw in Bullcoming was not an independent opinion of an expert with he offered no independent analysis. He simply read off a report that was prepared by another lab, and that, in Bullcoming, that was offered to prove the truth of the matter asserted. We did not offer Selmark reports here to prove the truth of the matter asserted. We offered the expert opinion of Ms. Lombados. And her credibility was attacked through a very vigorous cross-examination here, and that satisfies the Confrontation Clause. The testimonial statements, again, are statements that are made in lieu of live testimony. And the key is the live testimony here, which we presented live testimony. The reports from Selmark, in our conclusion, is that they are not testimonial in nature. And what Petitioner is asking you here to do here today is to expand Crawford, to expand the Confrontation Clause, to expand the definition of hearsay, and the definition of testimonial. And our position simply is to ask you to maintain the rule of Crawford, which is quite clear, that a witness becomes a — an out-of-court declarant becomes a witness against an accused within the concept of the Confrontation Clause when their extra judicial statements are offered to prove the truth of the matter asserted. So the witness here — Ginsburg. Does Illinois have a notice in demand that does not? No. And so our position, Your Honors, is to maintain the rule of Crawford. There is no such thing as inferential hearsay, as the Petitioner wants you to believe. A statement is a statement. Hearsay is hearsay. There is no such thing as inferential hearsay. What was presented here in this case was consistent with the Confrontation Clause. It was satisfied, and for — and for that, we respect your opinion here today. But we ask that you maintain the ruling of Crawford. She was asked, just to be clear, what she was testifying to. Did you compare the semen that had been identified by Brian Hapak from the vaginal swabs of Latonia Jackson to the male DNA profile that had been identified by Karen Coole from the blood of Sandy Williams? Yes, I did. She is accepting and affirming the statement that what we — she was comparing was the semen that had been identified from the vaginal swabs. She is accepting and she is relying on the material that was generated by Cellmark. But again, the State did not admit into evidence or try to admit into evidence the Cellmark report or any statements from Cellmark. Thank you, counsel. Mr. Dreeben. Thank you, Mr. Chief Justice, and may it please the Court. Sandra Lombardos' testimony really has to be analyzed as having two components to it. The first component is the match, the match between the data reflecting the allele charts from Cellmark and the data that was produced in analyzing Petitioner's blood. As to that component of her testimony, she's a live witness. She's subject to cross-examination. I don't think that anyone asserts there's a confrontation clause issue. But as several members of the Court have pointed out, that testimony is entirely irrelevant and non-probative unless it can be linked to the semen that was taken from the victim and that was subsequently analyzed to generate a DNA profile. As to that issue, Illinois State law provides that her testimony cannot be used to disprove or not prove, for the truth of the matter asserted, what Cellmark did. She cannot repeat on the witness stand when she gives the basis for her testimony things that Cellmark said and have them be taken from the truth. Sotomayor But, Mr. Dreeben, she did repeat what Cellmark said. I asked your — the State's attorney whether, if she had read the data report from the laboratory analysis, would that have been a violation of the confrontation clause. Not clear. She says, only if you admitted it. But, in fact, that's what she did. If you read her testimony, I give you an example at page 79, she tells on cross-examination exactly what the steps were in the Cellmark report, what numbers they gave, and she tells and explains. She takes — the State's attorney took pride in this. She said, I disagree with that number that they came up with. I think the number should be. So she's really reading the report? Dreeben Well, first of all, Justice Sotomayor, that did come in on cross-examination, and I don't think the Petitioner is contending. It's evidence that he himself elicits on cross-examination. Sotomayor All right. So then let's not — all right. So let's get to the question. Could the State have done this? Dreeben Can I focus on your question? I think because she clearly did link the DNA that she compared to the blood DNA to the semen that was sent to Cellmark. And I think that several members of the Court have raised the question, is she implicitly there by repeating what Cellmark said and then making Cellmark the out-of-court witness? My answer to that is twofold. First of all, as a matter of Illinois State law, she could not do that. She is not permitted to give the basis for her opinion in that respect and have it taken for the truth. Kennedy If that's so, why isn't there insufficient evidence in this case? Dreeben And this brings me to my second reason for saying that this is not a confrontation clause problem. It's in essence what the Chief Justice described and what Justice Alito referred to as the circumstantial way in which the factfinder can infer that Cellmark tested the DNA in the semen that was sent to it. There's a shipping manifest that shows that the semen goes out to the lab. There's a shipping manifest that shows that it comes back and Cellmark tenders it.  None of which has anything to do with the accuracy of the test. Dreeben Correct. And that is, I think, the crucial point here. The State may have a very weak case if it doesn't produce a witness from the lab who can attest to the fact that the lab did what it was supposed to do and conducted a properly authorized DNA examination. It has to get by with the very skimpy circumstantial showing of we sent the material out. Roberts No, it doesn't, though. It could have — could it have a witness saying Cellmark is the nation's foremost DNA testing laboratory, they hire only people who have Ph.D.s in DNA testing? I mean, is that all right? Dreeben Yes. Roberts The State can make its case a lot stronger. Dreeben And it did that here by saying that Cellmark is an accredited laboratory and Sandra Lombatos participated in designing proficiency examination. But she had to admit on cross-examination that she had no idea what Cellmark actually did in this case. She could draw inferences, and the inferences that she drew are what enabled her to say, my opinion is there is a match between the DNA in the semen and the DNA in the blood. Kennedy As you understand, Your Precedence, would this have been a stronger or a weaker case if a representative, an employee of Cellmark had come and said, although I didn't do this sample, I want to tell you how our procedures work and why we're a respectable lab, et cetera, et cetera? Dreeben It would have been relatively stronger had a witness been able to actually come from Cellmark and validate that Cellmark is an accredited laboratory and conducts procedures in a certain way. But the crucial point here is that Sotomayor Mr. Dreeben, if no expert from either lab came in, if an expert had the Cellmark information and the Illinois State Police information, not offered for the truth of the matter, and came in and said, I match this and I match that, and it's the defendant, could that have been done? Dreeben Only if, as a matter of State law, there was a sufficient foundation for the fact finder to conclude that the DNA actually came from the blood and the DNA came from the semen. Scalia Mr. Dreeben, that seems to me extraordinary. I mean, we have a confrontation clause which requires that the witnesses against the defendant appear and testify personally. And the crucial evidence here is the testing of the semen found on the swab. That is the crux of this evidence. And you're telling me that this confrontation clause allows you to simply say, well, we're not going to bring in the person who did the test, we're simply going to say this is a reliable lab. I don't know how that complies with the confrontation clause. Dreeben The confrontation clause, Justice Scalia, does not obligate the State to present a strong case. It does not prevent the State from presenting a relatively weaker case, so long as it does not rely on testimonial statements to prove the truth of the matter asserted. This Court held in Bruton v. United States that there is a very narrow exception to the almost invariable presumption that juries will follow the instructions that they're given. If they are told not to take evidence for the truth of the matter asserted, they are presumed to follow that instruction. Here, Illinois State law supplies that filter. Everything that the judge heard, he filtered through Illinois State law that says the basis for the expert's opinion doesn't prove its truth. So the State gave up the right to say, you can believe that this DNA report is reliable and trustworthy because cell mark says so. The State doesn't get that benefit. And as a result of not getting that benefit, it is not obligated to treat cell mark as if it's a witness. Cell mark. Kagan I suppose the problem is, Mr. Dreeben, that if the State put up Ms. Lombatos and Ms. Lombatos had to say, I did a match, I was given two reports, there was a match, but I have no idea where this other report came from. You know, it might have been from the victim, but it might not have been. I don't have a clue. The State would never have put that prosecution on because the State would have understood that there was no case there. The State is relying on the fact that people will take what Ms. Lombatos says about what she knows about where the report came from as a fact, as the truth of the matter, that in fact this report did come from the victim. And so the jury can be given instructions saying you can't consider this except for the truth of the matter asserted, but it's a bit of a cheat, no? No, I think, Justice Kagan, when you consider the things that this Court has held, juries can properly apply limiting instructions to. They can hear the fact that evidence was seized from the defendant. Marijuana was found at his house. The defendant gets up on the stand and says, no, it wasn't. The State can introduce that marijuana to impeach his testimony, and the jury is instructed, you may not use that as proof that he possessed marijuana, only to impeach his testimony. The same is true with unwarned statements in violation of Miranda. Scalia, because this is a bench trial, and in a bench trial the judge is presumed to follow the law, and as my colleague read to the Court, so we simply have a presumption even though, even though the Court's statement seems to indicate that he does take it for the truth of the matter. And you're saying, well, he couldn't have, because that would be against the law. The Illinois Supreme Court found, as a matter of State law, that he did comply with State evidentiary rules, and he did not take the Selmark report for the truth of the matter asserted. And there is, in this case, an alternative route of proof which is circumstantial, and I take the Chief Justice's amendment of my description of the facts to include that Selmark is an accredited laboratory, that does add to the probative value, but it's a much weaker chain of support to conclude that the DNA male profile came from the semen than if they had produced Selmark. But not having produced Selmark, they do not need to afford confrontation on Selmark. Roberts. Thank you, counsel. Mr. Carroll, you have four minutes remaining.   Mr. Chairman, I would like to start with the fact that in the case of 1772 in the joint appendix, as a reference to the trial judge stating that he was not considering Selmark's statement for his truth, that's not a cite to the transcripts of the trial. That's a cite to the Illinois Supreme Court's opinion. Nowhere in the actual trial transcripts did the judge ever state, I'm not considering this evidence for its truth. In fact, in the statement of facts on page JJJ151 of the record, he states that it's the testimony of the experts that makes this link. Selmark is an accredited lab. And it's inconceivable that in the face of the evidence of Selmark's work that the prosecution presented through Lombardo's testimony and during defense counsel's objections to that testimony that the judge would never state at any point, hey, I'm not considering this for its truth. Are you saying that we owe no deference to the Illinois Supreme Court's judgment on this evidentiary issue? And if so, no deference, tell me what proposition of law supports that. Are you saying deference is due, but we shouldn't give it? Which of the two positions will you take? I think deference is due, but you shouldn't take it given the record in this case. Scalia Why is deference due? I mean, it's either the fact or it's not the fact. If a State supreme court opinion says something that contradicts the, you know, the record, we owe it deference? I don't know any such rule. We owe it deference to its interpretation of Illinois law, I suppose. I guess I — if this Court would like not to give the Illinois Supreme Court deference, I'd be more than happy to. I think we should give it deference where deference is due and not give it deference where deference is not due. And on statement of facts that either are erroneous or not, I don't know why deference is that way. Your Honor, you do think our law is established, though, that a jury will follow an instruction in this situation to — not to take the testimony for truth of the evidence, for truth of the matter? Not in this situation, Your Honor. Do we have any case saying that the instruction is inadequate in a case like this? Not in this particular fact pattern, but this case is different than a Bruton-type situation where there are — there is a proper way to consider the evidence and an improper, and there's a fear that the jury is going to — or the trier of fact is going to consider the improper. Here, Illinois law did allow the trier of fact. Are you aware that in Illinois they have an instruction, assuming it's a jury case — this is a bench case, but if it were a jury case — ladies and gentlemen of the jury, you are not to presume or assume that the DNA tested by Selmark came from this sample. Yes, Your Honor. That there is such an instruction in Illinois law. However — And then they routinely give that to jurors? I believe they do, Your Honor. However, in this case — or Illinois law does not prohibit the trier of fact from considering Selmark's statements. The trier of fact is allowed and is expected to consider it in assisting the trier of fact in evaluating Lombardo's opinion. And in this situation, where Lombardo's — the only way that the Selmark statements support Lombardo's opinion is if they're true, there is no meaningful difference between considering the statements in assessing Lombardo's opinion and considering them for the truth. So this is a— Sotomayor, I'm sorry. I'm going back to Justice Kennedy's question. There is an Illinois requirement that the trial judges give the instruction he described? I believe there is a recommended jury instruction for — that the basis evidence is not to be considered for its truth, Your Honor. Under Rule 703 of the Illinois Rules of Evidence, are the facts that an expert takes into account in reaching his or her opinion introduced for the truth of the matter asserted? Not under the language of the Rule, Your Honor, no. Thank you, counsel. The case is submitted.